UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WALEED ALBAKRI

        Plaintiff,                                        Case No. 6:15-cv-1969-Orl-31GJK

v.

ORANGE COUNTY
SHERIFF'S OFFICE

        Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Preliminary Statement**

1. Plaintiff Waleed Albakri (hereinafter "Albakri" or "Plaintiff") is a Muslim of Arab and Jordanian descent. He became a police officer in 2001, and began working at the Orange County Sheriff's Office (hereinafter "OCSO" or "Defendant") in 2008. While working at the OCSO, Albakri received praise for his work, and was promoted to the drug unit in 2010. In his new unit, Plaintiff was subjected to religious, racial and ethnic discrimination and harassment. On March 31, 2014 after complaining about the discriminatory actions of the Defendant, he was terminated from OCSO.

2. Plaintiff Albakri brings this action pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., for discrimination based on race, religion, national origin, ethnic characteristics, and retaliation.

**JURISDICTION**

3. Jurisdiction of this matter is conferred by 28 U.S.C. § 1331 and 1343(3) and 42 U.S.C. §2000e-5(f). Venue in this Court is proper in that Albakri was employed with OCSO in

Orange County, Florida and most of the alleged acts herein occurred in Orange County, Florida.

## PARTIES

4. Plaintiff Albakri is a resident of Orlando, Orange County, Florida. He was an employee at OCSO from 2008, until he was terminated on or about March 31, 2014. Throughout all relevant times Plaintiff was and is an adherent of the Muslim faith.

5. Defendant Orange County Sheriff's Office is a Florida public employer with its principal place of business in Orlando, Florida. Defendant is an employer within the meaning of Title VII as it has continuously employed at least 15 employees during the current or proceeding calendar year.

## STATEMENT OF FACT

6. Albakri became a law enforcement officer in 2001, and began working at OCSO on March 21, 2008.

7. Due to his outstanding record, Albakri was promoted to the position of drug agent on Squad Three in the Street Drug unit on October 2010.

8. As a drug agent, Albakri operated as an undercover vice detective and was responsible for investigating street drug and vice cases.

9. Islamophobia is the irrational fear and harassment of individuals based on their belief in Islam. Many Muslim Americans are subjected to Islamophobia through the use of offensive slurs relating to sexual orientation.

10. In October 2011, Albakri's direct supervisor, Sergeant James Batie (hereinafter "Batie") began harassing Albakri, calling Albakri a "fag", and telling Albakri "You love being a fag."

11. Also in October 2011, Batie offensively referenced Albakri's religious beliefs by making sexual comments about Albakri's sister-in-law, e.g. "When I'm done fucking your sister, she won't be a virgin anymore." Albakri's sister was an unmarried Muslim woman. According to Islam, Muslims should remain virgins until marriage.

12. Batie continued harassing Albakri between October 2011 and August 2012, telling Albakri that his wife enjoyed his "snake" or "anaconda," referencing his genitals, and saying "Don't be surprised to find used condoms when you get home."

13. In April 2012, Albakri told Batie to stop making offensive comments towards him, to which Batie responded "Shut up, faggot. You are gay and enjoy it."

14. When Albakri took pre-scheduled FMLA leave for the birth of his daughter in May 2012, Batie continually called Albakri to force him to return to work early. In these phone calls, Batie threatened to take away Albakri's workplace privileges for taking FMLA leave. Albakri returned to work early as a result.

15. Between May and June 2012, Batie went so far as to prevent Albakri from attending scheduled trainings required of him as a police officer. When Albakri was able to attend trainings, Batie harassed Albakri in front of other police officers, calling him a fag continually throughout the training sessions. When Albakri asked Batie to stop, he ignored Albakri's requests.

16. In June 2012, Officer Cristian Readdy (hereinafter "Readdy") approached Albakri in the OCSO with a banana. Readdy placed the banana on his genitals, displayed the banana to Albakri, and told him to "suck it, homo." Then, Readdy placed the banana on Albakri's shoulder, asking "Oh, is this a hostile work environment?"

17. Other officers on Albakri's squad, including officers Readdy and Mike Mandarano (hereinafter "Mandarano"), also directed both homophobic and Islamophobic slurs at Albakri. Some officers, such as Curtis Stewart, Marco Ruiz, and Mandarano, began calling him a "terrorist," "sand-nigger," "kabum" (relating to the sound made when a bomb goes off), and "7-11" (relating to an Arab American stereotype), which are derogatory terms used to describe people of Arab or East Asian descent.

18. Batie witnessed the harassment other officers directed at Albakri and not only failed to stop it, but actually laughed at the offensive comments.

19. Albakri was the only Muslim Arab working at OCSO and the only employee subjected to homophobic and Islamophobic slurs.

20. On June 14, 2012, Albakri was scheduled to go with the SWAT team, and Corporal Winsett told Albakri "Sergeant Barrett wants you to stay back here and watch his tent."

21. In August 2012, Agent Kirk Stewart told Albakri that he could never be an American because he was a "Muslim Arab."

22. In response to Stewart's comment, Albakri requested that Batie report these Islamophobic comments to Batie's supervisor, Lieutenant Bruce McMullen (hereinafter "McMullen"), to which McMullen replied "Have [Albakri] do more work and shut them up that way."

23. Also in August 2012, Batie tried to deny Albakri a promotion; when Albakri complained about not receiving the promotion as was his right as most senior officer, Batie threatened to take away his assigned vehicle.

24. During that same conversation, Batie harassed Albakri for requesting a religious accommodation allowing Albakri to fast during Ramadan, a religious holiday requiring

Muslims to fast until sunset. Specifically, Batie told Albakri that he would not be allowed to fast "under his watch."

25. On August 24, 2012, Albakri submitted a written complaint about the hostile work environment created by Batie and other officers to the Professional Standards Section (Internal Affairs) of the OCSO (hereinafter "PSD Complaint").

26. After Albakri filed his PSD Complaint, agents Luis Tabio and Samer Herro were told by Detective Alex Roman and Detective Marco Ruiz that since Albakri had complained, they were going to "treat him (Albakri) like shit."

27. At some time between August 24, 2012 and October 26, 2012, Sergeant Joseph M. McCollom (hereinafter "McCollom") and Sergeant Tony Marlow (hereinafter "Marlow") questioned Albakri about his PSD complaint, specifically asking about the expected outcome and his plans of legal pursuit.

28. On October 26, 2012, OCSO arrested Albakri.

29. Professional courtesy at the OCSO dictates that if an officer is arrested, that arrest takes place after the officer is called to the OCSO's physical office, where the arrest takes place quietly and privately.

30. On February 5, 2012, Lt. Kurt Harmon with the Department of Financial Services called and asked to interview Albakri in regards to an insurance claim he made in September 2011. Joseph McCollom started an internal investigation against Albakri once he was arrested on October 26, 2012. Against that usual practice, six OCSO Sergeants approached Albakri's home and publicly arrested him on October 26, 2012. Albakri was charged with violations of F.S. 817.034(4)(a)(3), Scheme to Defraud, and F.S. 817.234(1)(a), False and Fraudulent Insurance Claims.

31. An agent or employee of OCSO contacted media outlets about Albakri's arrest, which resulted in the media exposing Albakri's identity as Albakri entered the jail.

32. McCollom was present for the arrest and served him with Notice of the Internal Investigation. In the course of his arrest, Albakri learned that McCollom initiated a Professional Standards Section/Internal Affairs investigation of Albakri in relation to his criminal charges of scheme to defraud and false and fraudulent insurance claims (hereinafter "Internal Investigation").

33. On May 23, 2013, the State Attorney disposed of both criminal counts against Albakri *nolle prosequi.*

34. While Albakri was on administrative leave without pay, McCollom still investigated his PSD Complaint. Batie was disciplined for "Failure to Supervise" and demoted to Corporal around April 2013. However, Sheriff Jerry L. Demings reinstated Batie approximately a month after his demotion to his previous supervisory position of Sergeant. Subsequently, Batie retired.

35. Between October 26, 2012 and June 1, 2013, Albakri was placed on administrative leave without pay.

36. On June 1, 2013, Albakri was reinstated to light duty, but was still suspended as a law enforcement officer, pending the results of the Internal Investigation. Albakri was not allowed to perform any law enforcement duties outside the office during that time. Being confined to office work, Albakri was not able to do any overtime during this period, affecting his monetary compensation.

37. Upon returning to work at OCSO, Albakri was still not allowed to work as a sworn officer. On July 9, 2013, Albakri filed EEOC charge No. 511-2013-02415 on the basis of race, religion, national origin discrimination, and retaliation.

38. On October 18, 2013, in an effort to resume his law enforcement duties, Albakri requested the Discipline Dispute Resolution Process in order to resolve the Internal Investigation against him.

39. According to OCSO's Internal Complaints and Investigative Procedures Policy, the Discipline Dispute Resolution Process (hereinafter "DDRP") is "an elective process by which an employee may acknowledge having violated agency policy and accept discipline, rather than proceeding with a formal investigation and disciplinary appeal. A DDRP affords the employee and agency an opportunity to negotiate a mutually acceptable resolution to policy violations." Orange County Sheriff's Office General Order 5.1.2, effective April 2, 2010.

40. On October 23, 2013, McCollom sent Albakri an email acknowledging receipt of his request for the Discipline Dispute Resolution Process, and requested transcribed depositions from the Fraternal Order of Police Representative and Albakri's defense attorney concerning Albakri's criminal charge.

41. OCSO denied Albakri's Discipline Dispute Resolution Process request on November 29, 2013.

42. On December 30, 2013, OCSO concluded the Internal Investigation by issuing Albakri a Notice of Intent to Discipline.

43. From the time McCollom initiated the Internal Investigation, separate from the time tolled during Albakri's criminal investigation, until Albakri received Notice of Intent to Discipline, 221 days had passed.

44. OCSO must complete investigations of officer misconduct within 180 days from the time the Professional Standards Division initiated the investigation. Fla. Stat § 112.532.

45. On January 2, 2014, Albakri sent OCSO Major Nancy Brown of the Criminal Investigation Division notice of violation of his due process rights and requested a compliance hearing.

46. On January 6, 2014, four days after Albakri sent this request, the State Attorney took the unusual step of reopening the criminal case against Albakri; this reopening is extremely rare, and only happens in extreme exigent circumstances.

47. On January 10, 2014, Albakri was arrested while on duty, paraded around his office in handcuffs in front of his co-workers, and put on administrative leave without pay.

48. On March 3, 2014, Sheriff Demings denied Albakri's request for a compliance hearing. Albakri is aware of several non-Arab, non-Muslim officers who were granted requests for a compliance hearing in similar circumstances.

49. Albakri was called to a Captain Review Board Meeting on March 30, 2014, where Captain Dennis Rollins (hereinafter "Rollins") informed him that he would be terminated.

50. During this Board Meeting, Rollins called Albakri a "flaming idiot."

51. The OCSO officially terminated Albakri on March 31, 2014.

52. Albakri filed a second charge with the EEOC, Charge No. 510-2014-05290, on September 4, 2014, claiming discrimination based on race, religion, national origin, and retaliation.

53. Albakri has experienced emotional pain, suffering and humiliation as a result of Defendant's discrimination and retaliation.

54. In discriminating and retaliating against Albakri as described above, the OCSO acted with malice and with reckless disregard for Albakri's federal rights.

## CLAIMS FOR RELIEF

### Count I. Discrimination in Violation of the Civil Rights Act of 1866

55. Paragraphs 1 - 54 are incorporated by reference as if fully set forth herein.

56. OCSO continually harassed Albakri, forced Albakri to terminate his FMLA leave early, and wrongfully terminated Albakri because he is Muslim and of Arab descent, subjecting Albakri to unlawful discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

57. Albakri suffered damages as a result of OCSO's unlawful conduct, including loss of employment, loss of license, economic hardship, emotional pain and suffering, and humiliation.

58. In discriminating against Albakri, OCSO acted with malice and reckless disregard for Albakri's federally protected rights.

### Count II. Retaliation in Violation of the Civil Rights Act of 1866

59. Paragraphs 1 - 58 are incorporated by reference as if fully set forth herein.

60. In response to Albakri's informal and formal complaints of discrimination, OCSO harassed and terminated Albakri, thus retaliating against Albakri for opposing the racial and religious discrimination against persons who are Muslim or of Arab ethnicity, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

61. Albakri suffered damages as a result of OCSO's unlawful retaliation, including lost employment, loss of license, economic hardship, emotional pain and suffering, and humiliation.

62. In retaliating against Albakri, OCSO acted with malice and reckless disregard for Albakri's federally protected rights.

**Count III. Discrimination in Violation of Title VII of the Civil Rights Act of 1964**

63. Paragraphs 1 - 62 are incorporated by reference as if fully set forth herein.

64. Albakri belonged to a protected class, as he is a Muslim of Arab and Jordanian descent.

65. The OCSO took adverse action against Albakri by creating a hostile work environment and wrongfully terminating Albakri because of his race, religion and national origin.

66. Because of the severe and pervasive conduct permeated and encouraged by Batie and other officers, The OCSO subjected Albakri to a hostile work environment.

67. Not only was Batie's temporary demotion unequal to the horrendous discrimination Albakri faced, but it also did not directly address Batie's discriminatory actions, since his discriminatory actions were not mere failures to lead, but personal and within his supervisory capacity.

68. The OCSO had no legitimate business reason for creating a hostile work environment, nor for wrongfully terminating Albakri.

69. Any claims by the OCSO stating that Albakri was terminated for insurance fraud is merely pretext for unlawful discrimination, as he was never found guilty of the criminal charges against him.

70. Based on the foregoing, OCSO unlawfully discriminated against Albakri by creating a severe and pervasive hostile work environment and by wrongfully terminating Albakri because of his race, religion, and national origin in violation of 42 U.S.C. § 2000e et. seq.

71. As a result of this unlawful discrimination, Albakri suffered damages as a result of OCSO's unlawful conduct, including loss of employment, loss of license, economic hardship, emotional pain and suffering, and humiliation.

72. In discriminating against Albakri, OCSO acted with malice and reckless disregard for Albakri's federally protected rights.

73. Albakri satisfied all conditions precedent for bringing suit under Title VII.

74. On September 11, 2015, the U.S. Department of Justice issued notices of right to sue as to both of Plaintiff's EEOC charges. Plaintiff received these notices on or about September 21, 2015.

**Count IV. Retaliation in Violation of Title VII of the Civil Rights Act of 1964**

75. Paragraphs 1 - 74 are incorporated by reference as if fully set forth herein.

76. Based on the foregoing, OCSO retaliated against Albakri by failing to correct harassing behavior of which he complained, and further escalating harassment because of his opposition to discrimination against Muslims and persons of Arab ancestry, in violation of 42 U.S.C. §2000e-3(a).

77. Additionally, OCSO retaliated against Albakri by failing to give him notice of the internal investigation, continuing the internal investigation against Albakri after the statutory period for the investigation has lapsed, not allowing him an opportunity to resolve the investigation amicably, and wrongfully terminating him because of his

opposition to discrimination against Muslims and persons of Arab ancestry, in violation of 42 U.S.C. §2000e-3(a).

78. Albakri suffered damages as a result of OCSO's unlawful retaliation, including loss of employment, loss of license, economic hardship, emotional pain and suffering and humiliation.

79. In retaliating against Albakri, the OCSO acted with malice and reckless disregard for Albakri's federally protected rights.

80. Albakri satisfied all conditions precedent for bringing suit under Title VII.

81. On September 11, 2015, the U.S. Department of Justice issued notices of right to sue as to both of Plaintiff's EEOC charges. Plaintiff received these notices on or about September 21, 2015.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter an order:

(a) Enjoining Defendants from discriminating in the future on the basis of an employee's religion, ethnic characteristics or national origin, and from retaliating in the future against employees opposing such discrimination;

(b) Requiring Defendants to reinstate Plaintiff at the level which he would have attained absent discrimination;

(c) Awarding back pay and other economic damages to Plaintiff;

(d) Awarding compensatory damages to Plaintiff for emotional pain, suffering and humiliation caused by Defendant's acts of discrimination against Plaintiff;

(e) Awarding punitive damages caused by Defendant's acts of discrimination taken with malice and with reckless disregard for Plaintiff's federally protected rights;

(f) Awarding Plaintiff his reasonable attorney fees and costs of this action; and

(g) Awarding such other relief as this Court deems appropriate.

## Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

*/s/ Katherine Heffner*

Katherine Heffner
Florida Bar No. 112955
Email: kheffner@cair.com
Thania Diaz Clevenger
Florida Bar No. 97301
Email: tclevenger@cair.com
CAIR Florida
8076 North 56th Street
Tampa, FL 33617
Telephone: (813) 514-1414
Facsimile: (813) 987-2400

*/s/ Peter F. Helwig*

Peter F. Helwig
Florida Bar No. 0588113
Email: pfhelwig@tampbay.rr.com
Harris & Helwig, P.A.
6700 South Florida Avenue, Suite 31
Lakeland, FL  33813
Telephone:  (863) 648-2958
Facsimile:  (863) 619-8901

ATTORNEYS FOR PLAINTIFF